```
         IN THE UNITED STATES DISTRICT COURT FOR
        THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                               *
FOUR MILE RUN CENTER, INC.,
                               *
     Plaintiff,
                               *
v.                                     CIVIL NO.: WDQ-06-0494
                               *
CONOCOPHILLIPS COMPANY,
et al.,                        *

     Defendants.               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Four Mile Run Center, Inc. ("Four Mile") has sued ConocoPhillips Company ("ConocoPhillips") and 3809 Crain Limited Partnership ("Crain") for breach of contract. Pending are ConocoPhillips's and Crain's motions for summary judgment. For the following reasons, the motions will be denied.

I. Background

Crain, a Maryland limited partnership, currently owns real property at the intersection of Ballpark Road and U.S. 301 in Bowie, Maryland (the "Ballpark Road Property"), and is the former owner of an adjacent parcel at 16520 Ballpark Road (the "Adjacent Property"). Compl. ¶ 2. On October 1, 1996, Crain leased the Ballpark Road Property to Mobil Oil Corporation ("Mobil"). *Id.* ¶ 3, Crain's Mem. in Supp. of its Mot. for Summ. J. ("Crain Mem.") Ex. A (the "Master Lease"). On September 14, 1999, Mobil sublet

the Ballpark Road Property to Four Mile, a Virginia corporation. *Id.* ¶ 4; ConocoPhillips's Mem. in Supp. of its Mot. for Summ. J. Ex. C (the "Sublease").  Mobil later assigned its interest in the Sublease to Tosco Corporation, and ConocoPhillips became the successor to Tosco Corporation's interest in the Sublease by a merger.  *Id.* ¶¶ 4-5.

Under § 6.1 of the Master Lease, the tenant is entitled to use the Ballpark Road Property "for a service station and related uses." *Id.* ¶ 9.  Section 8.4A of the Master Lease provides the following anti-competition "radius restriction" on the land surrounding the Ballpark Road Property:

> Landlord covenants that no *real property* located within 1000 feet of the [Ballpark Road Property], owned, leased or controlled directly or indirectly by the Landlord will be developed or used, in whole or in part, for a service station or gasoline retail facility, or convenience store or mini-mart. . . . This covenant is a covenant running with the land for the term of this Lease, and for any term of renewal or extension, in favor of Tenant, its successors, or assigns. . . .

Master Lease § 8.4A (emphasis added).  Section 8.4B then sets out the following compliance provisions:

> If Landlord owns any real property subject to the restriction set forth in Subsection 8.4A, Landlord will deliver to Tenant a separate declaration for each such parcel in recordable form sufficient to constitute notice of the covenant to persons subsequently acquiring interests in the real property affected.  Any deed or other instrument delivered by Landlord to any other person granting or conveying an interest in any part of said real property shall contain a covenant similarly restricting the use of the property for the same period. . . .

*Id.* § 8.4B.

Under § 20.1 of the Sublease, the "Sublessor agrees upon the reasonable written request of the Sublessee, to use commercially reasonable efforts to enforce the material obligations of the Landlord under the Master Lease."  Sublease § 20.1.

HG Bowie Realty, LLC ("HG Bowie"), acquired the Adjacent Property from Crain after the execution of the Master Lease. Compl. ¶ 12.  A BJ's Wholesale Club ("BJ's") retail store has been erected on the Adjacent Property, a significant portion of which is located within 1,000 feet of the Ballpark Road Property. *Id*. ¶ 13; Crain Mem. Ex. B (the "Phoenix Survey").  BJ's has recently erected gasoline pumps on the Adjacent Property that are located at least 1,049 feet from the nearest point of the Ballpark Road Property.  *Id*. ¶ 13; Crain Mem. 14; Phoenix Survey.

Four Mile alleges that Crain breached its obligations under the Master Lease by failing: (1) to record the restrictive covenants in § 8.4 on the Adjacent Property; and (2) to include the restrictive covenants in the deed conveying the Adjacent Property to HG Bowie, as required by § 8.4B.  *Id*. ¶ 21.

On February 1, 2005, Four Mile sent a letter to ConocoPhillips, notifying it of the alleged violation of § 8.4 of the Master Lease; and, on March 1, 2005, ConocoPhillips sent a letter to Crain, stating that the intended gasoline retail facility was a violation of § 8.4 and demanding cessation of its development.  *Id*. ¶¶ 14-15; Pl.'s Resp. to ConocoPhillips's Mot.

for Summ. J. Exs. B and C.

Four Mile alleges that ConocoPhillips has breached its obligations under the Sublease by failing to use commercially reasonable efforts to enforce the restrictive covenants in the Master Lease. Compl. ¶ 25.

II. Discussion

A. Standard of Review

1. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Thus, "the judge must ask . . . whether a fair-minded jury could return a verdict for the

[nonmoving party] on the evidence presented." *Id.* at 252. The court must also view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 257. The mere existence of a "scintilla" of evidence is insufficient. *Id.* at 252. If the nonmoving party fails to show an essential element of his case on which he will bear the burden of proof at trial, all other facts are rendered immaterial, and the moving party is entitled to a judgment as a matter of law. *Celotex*, 477 U.S. 317, 323; Fed. R. Civ. P. 56(e).

2.  Breach of Contract

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175 (2001).

B.   Analysis

1.   Crain's Motion for Summary Judgment

Crain presents two arguments in support of its motion for summary judgment.  First, it argues that the term "real property" in the radius restriction of Master Lease § 8.4A should be construed to mean only the "portion of a contiguous parcel" occupied by the gas pumps, rather than the "entirety" of the parcel occupied by the "service station, []gasoline retail facility, []convenience store or mini-mart" selling the gas.  As the gas pumps erected by BJ's are outside of the 1,000-foot radius of the restrictive covenant in § 8.4A, Crain argues that there has been no breach.  Second, Crain contends that Four Mile has failed to adequately respond to its discovery requests for evidence justifying Four Mile's damage claim of $2.5 million, and so has failed to meet the burden of production for its breach-of-contract claim.

a.   Construction of "Real Property"

i.   Maryland Law of Contract Construction

In Maryland, the interpretation of a contract, including whether it is ambiguous, is a question of law for the court. *Walton v. Mariner Health of Maryland, Inc.,* 391 Md. 643, 660 (2006).  "Maryland courts follow the law of objective interpretation of contracts, giving effect to the clear terms of

the contract regardless of what the parties to the contract may have believed those terms to mean." *Towson U. v. Conte* 384 Md. 68, 78 (2004). "[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656-57 (2006) (citation and internal quotation marks omitted).

"An ambiguity arises when the language of the contract is susceptible of more than one meaning to a reasonably prudent person." *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340 (1999). But "[a] contract is not ambiguous merely because the parties do not agree as to its meaning." *Phoenix Services Ltd. P'ship v. Johns Hopkins Hosp.,* 167 Md. App. 327, 392 (Md. Ct. Spec. App. 2006). "If a written contract is susceptible of a clear, unambiguous and definite understanding, . . . its construction is for the court to determine." *Rothman v. Silver,* 245 Md. 292, 296 (1967).

A court must "attempt to construe [a] contract[] as a whole, to interpret [its] separate provisions harmoniously, so that, if possible, all of them may be given effect." *Walker v. Dep't of Human Resources,* 379 Md. 407, 421 (2004). Thus a disputed term must be considered in the context of the entire agreement. *Phoenix,* 167 Md. App. at 393 (*citing Atl. Contracting & Material*

*Co. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004)).

ii.  The Court's Construction

Crain offers two arguments in support of its construction that "real property" in Master Lease § 8.4A means only the portion of land physically occupied by the gas pumps, and not the entire parcel.  First, it argues that the Master Lease uses more specific terms such as "parcel," "site," and "tract" to refer to entire defined portions of real property, so such terms would have been used if the parties had so intended.  Second, Crain argues that the third paragraph of § 8.4A would be superfluous if the parties' intent had been to limit the use of land outside of the 1,000-foot radius for gas pumps.[1]

Although the Court agrees with Crain that the parties' use of "real property" in the Master Lease conveys the more general meaning of land than the more specific terms "parcel," "site," or "tract," such a construction does not support Crain's contention that the restrictive covenant in § 8.4 applies only to gas pumps, and not any portion of the establishment that sells the gas.  The

---

[1] The third paragraph of § 8.4A provides:
For the purposes of this Article 8, the term "mini-mart" shall be deemed to include 7-11, Stop N Go, Circle K, Tiger Mart and/or similar types of stores and it is expressly acknowledged that *any such use within 1,000 feet of the [Ballpark Road Property] shall be deemed a violation* of the aforesaid covenant.
Master Lease § 8.4A (emphasis added).

language of § 8.4A clearly provides that the restriction prohibits any "real property" (land) "used, in whole or *in part*, for a service station or gasoline retail facility." Master Lease § 8.4A (emphasis added). If BJ's would be in the business of selling gasoline to consumers, then it would be a "gasoline retail facility" under the Master Lease, and at least *part* of the land formerly owned by Crain within 1,000 feet of the Ballpark Road Property would be used by BJ's. A "gasoline retail facility" cannot be just the gas pumps--selling gas also requires such obvious essentials as storage facilities, administrative space, paved access for consumers, lighting, and signage, all of which also use land. Thus, the location of the gas pumps outside the restrictive radius does not free Crain from liability under the Master Lease if part of the land used by BJ's is within 1,000 feet of the Ballpark Road Property.

b.  Proof of Damages in an Action for Breach of Contract

Crain's argument that Four Mile has failed to meet its burden of production by not providing sufficient evidence of actual damages is also without merit. "It is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." *Taylor*, 365 Md. at 175. Accordingly, Crain's motion

for summary judgment will be denied.

2.  ConocoPhillips's Motion for Summary Judgment

ConocoPhillips contends that it owes no duty to Four Mile to enforce the covenants in Master Lease § 8.4 because that section is unenforceable under the Sublease.

ConocoPhillips first argues that Sublease § 20.2 unambiguously states that § 8.4 does not apply to its obligations under the Sublease.  Section 20.2 provides in part:

> Except as specifically stated otherwise to the contrary herein, the following provisions of the Master Lease shall not apply to this sublease:
>
>     Sections: . . . 8.4 . . .

Sublease § 20.2.

Taken out of context of the rest of Sublease § 20, § 20.2 might support ConocoPhillips's construction; however, § 20.1 provides in part:

> *Except as expressly provided below in Section 20.2*, . . . all the terms, covenants and conditions of the Master Lease contained therein shall be applicable to this Sublease with the same force and effect *as if Sublessor were the Landlord under the Master Lease and Sublessee were the Tenant* . . .

Sublease § 20.1 (emphasis added).  With effect given to § 20.1's specific reference to § 20.2, the Court finds that § 20.2's exclusion of § 8.4 merely relates back to the limited provision in § 20.1, which would otherwise make Master Lease § 8.4 enforceable by the Sublessee (Four Mile) directly against the

Sublessor (ConocoPhillips), rather than just against the Landlord (Crain).  In this case, Four Mile does not allege that ConocoPhillips is liable for breaching Master Lease § 8.4; but that ConocoPhillips breached its obligation under the Sublease to "use commercially reasonable standards to enforce the material obligations of the Landlord" under Master Lease § 8.4.

Lastly, ConocoPhillips contends that another portion of Sublease § 20.1 obligates Four Mile to look solely to Crain to enforce any rights under the Master Lease.  The relevant portion of § 20.1 states:

> Notwithstanding anything herein contained, the only services or rights to which Sublessee is entitled hereunder are those which Sublessor is entitled under the Master Lease and for all such services and rights Sublessee will look solely to the Landlord under the Master Lease and not to the Sublessor . . .

Sublease § 20.1.

"A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."  *Sagner v. Glenangus Farms*, *Inc.,* 234 Md. 156, 167 (1964).  The Court disagrees with ConocoPhillips's proposed construction, as it would render the following portion of the paragraph, where the Sublessor agrees to "use commercially

reasonable standards to enforce the material obligations of the Landlord," inoperative.  Accordingly, ConocoPhillips's motion for summary judgment will be denied.

III. Conclusion

    For the reasons stated above, the Defendants' motions for summary judgment will be denied.


January 5, 2007                              /s/
Date                             William D. Quarles, Jr.
                                 United States District Judge